**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 26-** |
| **v.** | : | **DATE FILED:** |
| **TIARA BARFIELD a/k/a "Benz"** | : | **VIOLATIONS:** **18 U.S.C. § 371 (conspiracy to commit wire fraud – 1 count)** **18 U.S.C. § 1343 (wire fraud – 1 count)** **18 U.S.C. § 510(b) (theft of Treasury checks – 1 count)** **Notice of forfeiture** |

**INFORMATION**

**COUNT ONE**

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

1. Defendant TIARA BARFIELD was a resident of the Eastern District of Pennsylvania and was employed by the United States Postal Service as a mail carrier. Defendant BARFIELD was assigned to the Bustleton Post Office located in Philadelphia, Pennsylvania.

2. Person No. 1 was a resident of the Eastern District of Pennsylvania.

3. Person No. 2 was a resident of the Eastern District of Pennsylvania and was Person No. 1's romantic partner.

4. Person No. 3 was a resident of the Eastern District of Pennsylvania and was Person No. 1's half-brother.

5. Person No. 4 was a resident of New York.

6. Person No. 5 was a resident of Georgia.

7. Person No. 6 was a resident of Georgia and a romantic partner of Person No. 5.

8. Person No. 7 was a resident of Philadelphia, Pennsylvania and Marlton, New Jersey.

9. The United States Department of the Treasury, Bureau of the Fiscal Service ("BFS"), was responsible for printing United States Treasury checks ("Treasury checks") and mailing these Treasury checks to individuals and businesses throughout the United States. These Treasury checks represented payments from many federal agencies and included, among many other payments, income tax refunds from the Internal Revenue Service (the "IRS"), social security benefit payments from the Social Security Administration, and veterans benefit payments from the Department of Veterans Affairs.

10. In many cases, individuals and entities that were entitled to receive Treasury checks changed residences or places of business without notifying the government or leaving a forwarding address. In other cases, the Treasury checks could not be delivered by mail to their intended recipients because the recipient mailboxes were damaged, there were no forwarding addresses, or the addresses were incorrect, among other reasons.

11. Treasury checks that could not be delivered by mail to the intended recipients were returned to a United States Post Office and labeled "Return to Sender" ("RTS"). Treasury checks labeled RTS from across the country were often transferred to the Bustleton Post Office, which functioned as a clearinghouse for undeliverable Treasury checks.

12. The Bustleton Post Office was a fully-operational post office, providing commercial services, such as retail transactions, and dispatching postal carriers to deliver mail.

13. The Treasury checks that were received by the Bustleton Post Office were placed in large trays that were stored on racks. Bustleton Post Office employees processed the returned Treasury checks daily.

14. From at least in or about November 2022 to on or about October 6, 2025, in the Eastern District of Pennsylvania, and elsewhere, defendant

**TIARA BARFIELD**

conspired and agreed, together and with Person No. 1, Person No. 2, Person No. 3, and others known and unknown to the United States Attorney, to commit offenses against the United States, namely, wire fraud, that is, devising and intending to devise a scheme to defraud financial institutions, the United States Department of the Treasury, and individuals and entities that were expecting to receive financial instruments by United States mail and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and transmitting and causing to be transmitted certain wire communications in interstate and foreign commerce, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1343.

**MANNER AND MEANS**

It was part of the conspiracy that:

15. Person No. 1 was in the business of obtaining and selling stolen financial instruments. The financial instruments included personal checks, business checks, credit cards, and Treasury checks (often referred to by the conspirators as "stims"). Person No. 1 recruited defendant TIARA BARFIELD to steal financial instruments while employed at the Bustleton Post Office. Person No. 1 recruited Person No. 2 and Person No. 3 to help him execute the scheme.

16. At Person No. 1's direction, defendant TIARA BARFIELD regularly stole the financial instruments from the Bustleton Post Office by removing large volumes of the envelopes (often hundreds at a time) in which the instruments were contained from this post office. Defendant BARFIELD often brought the stolen envelopes to her assigned United States Postal Service mail truck and drove the stolen envelopes away from the Bustleton Post Office.

17. Defendant TIARA BARFIELD delivered the stolen envelopes containing the financial instruments to Person No. 1, and others, at Person No. 1's direction.

18. Person No. 1 paid defendant TIARA BARFIELD a predetermined fee for the stolen envelopes containing these financial instruments. Typically, this fee amount was a percentage of the face value of the financial instruments that defendant BARFIELD had delivered to Person No. 1.

19. After Person No. 1 purchased the stolen envelopes with the enclosed financial instruments, he sorted and organized the various stolen financial instruments, with the assistance of co-conspirator Person No. 2 and, at times, co-conspirator Person No. 3. Among other things, they divided the financial instruments into the following groups: (i) stolen checks that Person No. 1 wanted to deposit into accounts that he controlled; (ii) stolen credit cards that he wanted to use to make unauthorized purchases; and (iii) stolen financial instruments that he intended to sell.

20. With the stolen checks in the first group, Person No. 1, defendant TIARA BARFIELD, and Person No. 2 caused these stolen checks to be deposited, or attempted to deposit them, into bank accounts controlled by Person No. 1, defendant BARFIELD, Person No. 2, and other members of the conspiracy for their own monetary gain, without the permission of the persons and entities to whom the instruments had originally been issued.

21. With the stolen credit cards, Person No. 1 used some of the stolen credit cards to make and attempt to make merchandise purchases that were not authorized by the original, legitimate cardholders.

22. With respect to the third group, Person No. 1 advertised the sale of many of the stolen financial instruments (including personal checks, business checks, credit cards, and Treasury checks) to prospective purchasers across the United States. Person No. 1 frequently used online platforms, including Instagram and Telegram, to advertise these sales to potential purchasers across the United States.

23. In most instances, Person No. 1 used advertising on publicly-facing platforms like Instagram to funnel potential buyers to more private and secure platforms such as Telegram. Person No. 1 directed these potential buyers to Telegram using secure, private, and encrypted channels, where he was able to post advertisements that included explicit photographs of stolen checks while not exposing his identity.

24. As a result of these advertisements, Person No. 1 sold large batches of stolen financial instruments to customers across the United States, who then deposited the financial instruments for their own monetary gain, without the permission of the persons and entities to whom the instruments had originally been issued. Person No. 1 charged these customers a percentage of the face value of the financial instruments.

25. Person No. 1 sold large batches of stolen Treasury checks to a number of repeat customers, including Person No. 4, Person No. 5, Person No. 6, and Person No. 7, who then deposited the checks for their own monetary gain, or resold the checks to other customers, all without the permission of the persons and entities to whom the checks had originally been issued.

26. Because Person No. 5 and Person No. 6 had introduced Person No. 1 to Person No. 4 for the purpose of selling stolen Treasury checks and Person No. 4 became a bulk purchaser of stolen Treasury checks from Person No. 1, Person No. 1 paid Person No. 5 and Person No. 6 a "finder's fee" for this introduction each time that Person No. 1 sold financial instruments to Person No. 4. This finder's fee was a percentage of the amounts that Person No. 4 paid Person No. 1 to purchase stolen Treasury checks.

27. Person No. 2 and Person No. 3 assisted Person No. 1 with various tasks needed to further the conspiracy, including (i) delivering the stolen financial instruments to Person No. 1's customers who had purchased them, (ii) picking up payments (including cash payments) for the financial instruments from customers, (iii) depositing stolen financial instruments into bank accounts that Person No. 2 and Person No. 3 controlled and to which they had access, (iv) withdrawing funds from bank accounts into which the stolen instruments had been deposited, and (v) mailing stolen financial instruments to purchasers.

28. At the direction of Person No. 1, Person No. 3 allowed his CashApp account to receive electronic payments from customers who had purchased stolen financial instruments from Person No. 1.

29. At the direction of Person No. 1, Person No. 3 subsequently transferred or otherwise provided some or all of these payments to Person No. 1.

30. The total face value of the Treasury checks stolen by defendant TIARA BARFIELD, delivered to Person No. 1, and ultimately deposited at Person No. 1's direction or sold to customers, including to Person No. 4, Person No. 5, Person No. 6, and Person No. 7, exceeded more than approximately $65 million. The successful negotiation of hundreds of these checks at financial institutions caused a loss to the United States of at least $20 million.

**OVERT ACTS**

In furtherance of the conspiracy and to accomplish its objective, defendant TIARA BARFIELD, Person No. 1, Person No. 2, and Person No. 3, together and with others known and unknown to the United States Attorney, committed the following over acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1. On or about November 23, 2022:

a. Person No. 2 sent a text message to Person No. 1 regarding issues that she was having while depositing a check into her TD Bank account.

b. Person No. 1 and Person No. 2 caused a stolen business check made payable to Company A to be deposited into Person No. 2's TD Bank account.

2. On or about March 21, 2023, defendant TIARA BARFIELD sent a text message to Person No. 1 about a $7,400 check from victim E.H.'s Wells Fargo account, telling Person No. 1 to deposit the E.H. check into defendant BARFIELD's KeyBank account.

3. On or about March 22, 2023, Person No. 1 caused to be deposited the $7,400 E.H. check into defendant TIARA BARFIELD's account at KeyBank, after altering the payee to read "Tiara Barfield."

4. On or about March 15, 2024, Person No. 1 posted an image on an Instagram account that he controlled displaying several Treasury checks and a Lowe's credit card, overlaid with the text, "Who needs something from Lowe's."

5. On or about March 21, 2024, Person No. 1 posted a video on an Instagram account that he controlled, displaying several Treasury checks and Lowe's credit cards, with a voice recording that said, "Lowe's credit already sold, but I got stims for sale."

6. On or about March 22, 2024, Person No. 1 saved a photograph of a Lowe's credit card in the name of victim H.M. to Person No. 1's phone.

7. On or about March 24, 2024, Person No. 1 called Synchrony Bank and impersonated victim H.M.'s husband while attempting to obtain approval to use the stolen H.M. Lowe's credit card to purchase merchandise at Lowe's. When the Synchrony Bank representative asked to speak with victim H.M., Person No. 1 added Person No. 2 to the phone call, who impersonated victim H.M.

8. On or about May 21, 2024:

a. Person No. 1 exchanged text messages with Person No. 4 about Person No. 4 meeting with Person No. 2 to buy Treasury checks.

b. Person No. 2 exchanged Telegram messages with Person No. 4 about Person No. 4 buying stolen Treasury checks.

9. On or about July 8, 2024, Person No. 1 sent a text message to Person No. 2 directing her to open a Citizens Bank account, stating the following purpose: "so we can drop that check when I get back."

10. On or about July 10, 2024:

a. Person No. 2 responded to Person No. 1's July 8, 2024 text message by texting Person No. 1, "First thing tomorrow."

b. Person No. 1 sent Person No. 2 a text message in reply with a list of to-do items that read, "1-Ship stuff out / 2-open citizens account / 3-get slips from the plug & open them." Person No. 1 used the phrase the "the plug" to refer to defendant TIARA BARFIELD.

11. On or before July 12, 2024:

a. Person No. 2 opened a Citizens Bank account in her name, as Person No. 1 had directed.

b. Person No. 1 caused to be deposited a check for $28,500 made payable to Person No. 2 into Person No. 2's Citizens Account. This check was drawn upon an Ameris Bank account into which a stolen Treasury check made payable to victim P.H. had previously been deposited.

12. On or about August 22, 2024, defendant TIARA BARFIELD stole a tray of Treasury checks from the Bustleton Post Office, which she subsequently provided to Person No. 1.

13. On or about August 29, 2024, Person No. 1 sent a text message to Person No. 3 about selling stolen Treasury checks to Person No. 7.

14. On or about September 9, 2024, defendant TIARA BARFIELD stole a tray of Treasury checks from the Bustleton Post Office, which she subsequently provided to Person No. 1.

15. On or about September 21, 2024, Person No. 1 sent a text message to Person No. 3, directing Person No. 3 to send Person No. 1 a photograph of a stolen Treasury check.

16. On or about January 27, 2025:

a. Person No. 1 sent a message on Signal to Person No. 4 containing Person No. 3's CashApp account information so that Person No. 4 would use this information to pay approximately $4,500 to Person No. 1 via CashApp. Person No. 4 owed Person No. 1 the funds as payment for stolen Treasury checks that Person No. 4 had purchased from Person No. 1.

b. Person No. 4 made two payments totaling approximately $4,500 to Person No. 3's CashApp account.

17. On or about March 22, 2025, defendant TIARA BARFIELD stole a tray of Treasury checks from the Bustleton Post Office, which she subsequently provided to Person No. 1.

18. On or about March 24, 2025, Person No. 1 sent a Telegram message to Person No. 5 about buying Treasury checks.

19. On or about March 25, 2025, Person No. 1 sent a Telegram message to Person No. 5 with an image of a FedEx Express receipt to document that Person No. 1 had mailed a package containing stolen Treasury checks to Person No. 5.

20. On or about May 3, 2025, defendant TIARA BARFIELD stole a tray of Treasury checks from the Bustleton Post Office, which she subsequently provided to Person No. 1.

21. On or about May 18, 2025, Person No. 1 sent a text message to Person No. 3 about meeting with a potential buyer of Treasury checks.

22. On or about May 31, 2025, defendant TIARA BARFIELD stole a tray of Treasury checks from the Bustleton Post Office, which she subsequently provided to Person No. 1.

23. On or about June 2, 2025, Person No. 1 sent a text message to Person No. 3 directing Person No. 3 to meet with a potential buyer of Treasury checks.

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO**
**(Wire Fraud)**

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 13 and Overt Acts 1 through 23 of Count One are incorporated here.

2. From on or about May 17, 2024, through on or about October 6, 2025, in the Eastern District of Pennsylvania, and elsewhere, defendant

**TIARA BARFIELD,**

together with Person No. 1, Person No. 2, Person No. 3, Person No. 4, Person No. 5, and Person No. 6, devised and intended to devise a scheme to defraud financial institutions, the United States Department of the Treasury, and individuals and entities that were expecting to receive financial instruments by United States mail and to obtain money and property by means of knowingly false and fraudulent pretenses, representations, and promises.

**MANNER AND MEANS**

It was part of the scheme that:

3. Paragraphs 15 through 30 of Count One are incorporated here.

**WIRING**

4. On or about December 7, 2024, in the Eastern District of Pennsylvania, and elsewhere, defendant

**TIARA BARFIELD,**

together with Person No. 1, Person No. 2, Person No. 3, Person No. 4, Person No. 5, and Person No. 6, for the purpose of executing the scheme described above, caused to be transmitted by means of a wire communication in interstate and foreign commerce, the text message from Person No. 1, in the Eastern District of Pennsylvania, to Person No. 4, then located outside of the

Commonwealth of Pennsylvania, providing a status update of Person No. 1's current location as they prepared to meet so Person No. 4 could purchase stolen Treasury checks from Person No. 1.

In violation of Title 18, United States Code, Section 1343.

## <u>COUNT THREE</u>
**(Theft of Treasury Checks)**

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

On or about May 3, 2025, in the Eastern District of Pennsylvania, defendant

**TIARA BARFIELD**

bought, sold, exchanged, received, delivered, retained, or concealed Treasury checks of the United States in the aggregate face value of more than $1,000, with knowledge that the Treasury checks were stolen.

In violation of Title 18, United States Code, Section 510(b).

**NOTICE OF FORFEITURE**

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Sections 371, 1343, and 510(b), as set forth in this information, defendant

**TIARA BARFIELD**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

Christine E. Sykes for

**DAVID METCALF**
**UNITED STATES ATTORNEY**

*No.*_ _ _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

**THE UNITED STATES OF AMERICA**

**vs.**

**TIARA BARFIELD**

**a/k/a "Benz"**

**INFORMATION**

Counts

18 U.S.C. § 371 – conspiracy to commit wire fraud – 1 count
18 U.S.C. § 1343 – wire fraud – 1 count
18 U.S.C. § 371 – theft of treasury checks– 1 count
Notice of Forfeiture

A true bill.

_______________________________

Foreman

Filed in open court this ____________________day,
Of ______________A.D. 20________

_______________________________

Clerk

Bail, $____________